United States Courts
Southern District of Texas
FILED

MAY 0 1 2018

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

MAYBELLINE GUNSTANSON
PLAINTIFF

CASE NO. _18-1391_

v.

JASON CALLOWAY GUNSTANSON
DEFENDANT
STATE OF TEXAS
JUDGE ALICIA YORK
JUDGE DIANA GUARIGLIA
DEFENDANTS

## NOTICE OF PETITION AND VERIFIED PETITION
## FOR WARRANT OF REMOVAL

**COMES NOW PLAINTIFF**[1], **MAYBELLINE GUNSTANSON** and in direct support of this request for removal of the above referenced state court cause into, and through, the various jurisdictions of this United States District Court provided under at least **28 USC § 1331, 28 USC § 1367, 28 USC 1441 (b), 28 USC § 1441 (c), 28 USC § 1441 (e), 28 USC § 1443 (1), 28 USC § 1443 (2), and/or 28 USC § 1446**, and on the federal questions involved, herein alleges, states, and provides the following:

### JURISDICTION

1. This District Court of the United States has original, concurrent, and supplementary jurisdiction, over this cause of action, pursuant to the authorities cited above, including, but

---

[1] The parties in the State Court Action were as follows: Mr. Jason Callaway Gunstanson was the Petitioner and represented by Mr. Brian Bleibdrey. Mrs. Maybelline Gunstanson was the Respondent and was initially represented by Mr. Ralph Ray Gregory, Jr. on January 25, 2017 Mr. Julio Joglar substituted in as Counsel for Mrs. Gunstanson and on November 7, 2017 Mr. Gregory once again assumed representation of Mrs. Gunstanson. The parties for the sake of simplicity will be identified in this document as the party was identified in the 311th District Court. Mrs. Gunstanson is Plaintiff/Respondent or the Petitioner of this motion and Mr. Gunstanson is the Defendant/Plaintiff/Respondent.

not limited to, the following, to-wit: **28 USC § 1331, 28 USC § 1367, 28 USC 1441 (b), 28 USC § 1441 (c), 28 USC § 1441 (e), 28 USC § 1443 (1), 28 USC § 1443 (2), and/or 28 USC § 1446.**

2. The District Court of the United States is an Article III court with authority to hear questions arising under the Constitution, Laws, and Treaties of the United States, including but not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. *See* the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (*hereinafter* "U.S. Constitution").

### RESERVATION OF RIGHTS DUE TO FRAUD

3. Petitioner hereby explicitly reserves her fundamental right to amend this and all subsequent pleadings, should future events and/or pre-trial discovery prove that she has failed adequately to comprehend the full extent of the damages which she has suffered at the hands of the Respondent, the State Court, and other involved parties, both named and unnamed, now and at all times in the future. *See* Rules 8, 15, and 18 of the Federal Rules of Civil Procedure.

### RECORD OF STATE PROCEEDINGS

4. Petitioner is now proceeding based on the presumption that the TEXAS state court record will be made available to this Honorable Court upon Notice and Demand for Mandatory Judicial Notice, pursuant to Rules 201 and 902 of the Federal Rules of Evidence, the Full Faith and Credit Clause contained under Article IV of the U.S. Constitution, and 28 U.S.C. § 1449. At the time of filing of this document, the undersigned requested that the Court file

Court file be made available to be copied and hand- delivered to the Federal District Court that this case is assigned to.

**INCORPORATION OF PRIOR PLEADINGS**

5. Plaintiff/Respondent hereby incorporates by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein.).

**ALLEGATIONS**

6. Plaintiff/Respondent specifically complains on matters which go to related federal questions, Plaintiff/Respondent believes that the conduct of Judge York and or Associate Judge Guariglia during the pre-trial phase of this lawsuit whether such conduct was due to bias or prejudice against the Plaintiff/Respondent or the lack of knowledge of the law resulted in the State District Court Judge York and or Associate Judge Guariglia directly or indirectly discriminating against Plaintiff/Respondent based on her sex, violating Plaintiff/Respondents Civil Rights, and or Plaintiff/Respondents fundamental constitutional rights including but not limited to violations of the Plaintiff/Respondent's Due Process of the law. Studies conducted across the nation indicate that family law courts routinely discriminate against women and additionally deny these same women the due process of the law all in violation of their Constitutional Rights. (See attached Exhibit J, bibliography of studies recording discrimination and denial of the due process of the law to women before family law courts.)

This Court has denied the protections of the Due Process Clause of the 14th Amendment during this the pre-trial aspect of this trial as more specifically identified in the body of this

Petition for Removal.  These violations include those protections or laws pertaining to the Plaintiff/Respondent and her rights as a parent of two children.  The State failed to overcome the presumption that Plaintiff/Respondent is a fit parent to warrant the State intervention and interference with Plaintiff/Respondent's right to the care custody and control of her children.  The State failed to protect the Plaintiff/Respondent from the unlawful search of the Plaintiff/Respondent without proper suspicion or her consent.  The State consistently used its authority to deny to the Plaintiff/Respondent those right guaranteed to her under the Constitution of the United States.  The state court has failed to follow the requirements of the Supreme Court case of Daubert regarding the introduction of scientific reports as admissible evidence to be used during pre-trial hearings.  This state court's action has led to the denial or the inability of this court to enforce, in the courts of a State, one or more rights under any law providing for the due process of the rights of citizens of the United States, or of all persons within the authority thereof.  Furthermore, the State Courts actions has resulted in the Court formulating orders which have resulted in the State interfering with the Plaintiff/Respondent's right to be a parent and the State action is contributing to and or destroying the right of Plaintiff/Respondent to be a parent without the State overcoming the presumption that she is a unfit parent.

7. Plaintiff/Respondent complains of various systematic and premeditated deprivations of Fundamental Rights guaranteed by the U.S. Constitution, by the Constitution of the State of TEXAS, as lawfully amended (*hereinafter* "Texas Constitution"), and by federal law, and which deprivations are criminal violations of 18 U.S.C. §§ 241 and 242. *See also* 28 U.S.C. § 1652.

4

The rights of parents to "establish a home and bring up children" and "to control the education of their own." ***Pierce v. Society of Sisters***, 268 U.S. 510, 534-535 (1925), the court held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."  The Court went on to explain that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." ***Prince v. Massachusetts***, 321, U.S. 158 (1944), the Court again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations **the state can neither supply *nor hinder*.**" (Citing Meyer and Pierce) In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of the parents to make decisions concerning the care, custody, and control of their children.  One could reasonably assume from this language that "parental rights" should be protected as strongly as our right to free speech and our right to practice the religion of our choice.

8. Refer to attached Exhibit I.  Exhibit I is a list of those major activities occurring during the State Court proceedings up to this point.

9. Narrative of the 311th District Court violations of the Petitioners Constitutional Rights guaranteed to the Petitioner pursuant to the 14th Amendment of the Constitution.  In the present case the trial court Judge York and or Associate Judge Guariglia has assumed incorrectly that it has authority to decide matters based on the "child's best interest".  This

Court must first establish its authority to act against the Respondent *who is presumed by law to be fit*. Because the Court did not make this preliminary finding in the current custody dispute the orders and actions against the Respondent are infringements and unconstitutional actions by this State Court.

In the present case, Judge York and Associate Judge Guariglia have incorrectly assumed that it has authority to decide matters based on the "child's best interest". This Court must first establish its authority to act against the Respondent who is presumed by law "to be a fit parent". Because the Court did not make this preliminary finding that Respondent was unfit, thus the resulting Courts violation of Respondents right to the Due Process of the law the State Courts current orders and actions against the Respondent are infringements and unconstitutional actions by this Court and should be set aside. The Respondent adequately cared for the children. There is no reason or credible admissible evidence for the State to inject itself into the private realm of the Respondents family to further question the ability of the Respondent to make the best decisions concerning the rearing of Respondent's children. Any presumption, including "the best interest of the children" fails to provide any protection for the Respondent's fundamental constitutional right to make decisions concerning the rearing of her children. Any visitation and or Custody Order entered by this Court is an unconstitutional infringement on the Respondent's fundamental right to make decisions concerning the care, custody, and control of her two children.

The Court, Judge York and or Associate Judge Guariglia cannot deny the Respondent of her Fundamental Liberty Interest regarding the care, custody and control of her children nor may the Court deny the children's Right to free association with the Respondent during this

divorce proceeding. Judge York and or Judge Guariglia cannot place an "undue burden" on the exercise of these rights as the Court has already done by placing restrictions on the Respondent's visitation rights affecting her Constitutional Rights. The Court, Judge York and or Judge Guariglia, have failed to establish a compelling state interest to step in and restrict the ability of the Respondent to exercise her fundamental right to the care, custody, and control of her children. This Court has violated the Due Process rights of the Respondent because it has not established, nor has Respondent been adjudicated unfit by this court or any other court. The Court has failed to show that any decisions made by the Respondent on behalf of her children jeopardize the health or safety of the children. Additionally, the Court cannot merely **assume** such alleged dangerous decisions were made by the Respondent on behalf of her children, but the accusations must be established and are provided with the appropriate due process requirements which in the present case have been violated by this Court.

The Court should not be able to use a hearsay scientific report obtained in violation of the State Courts illegal drug testing order that was based on the alleged consent of the Respondent as the foundation to support the Courts current orders that restrict the Respondent from her right to the care custody and control of her children. This Courts use of this hearsay report was done in violation of the due process rights of the Respondent when the Court failed to comply with Family Code §105.003 (d) which provide as follows:

> When information contained in reports, study, or examination is before the court, the person making the report, study or examination is subject to both direct examination and cross examinations in civil cases generally.

In *Kates v. Smith* 556 S.W2d. 630, 632 (Tex.App.—Texarkana 1977, orig proceeding). "To deny a party the opportunity to examine or cross-examine the author of a report being considered by

the court deprives that party of a valuable right to deny, contradict or overcome by other evidence the matters contained in the report. … The aggrieved party still has been deprived of information possibly valuable to him and has been denied the opportunity to properly present his case both in the trial court and in the appellate court. Realistically as in the present case the Court has deprived the Respondent of the Due Process of the law.

This Court does not have the authority to hold any hearings to deny or infringe on the Fundamental Liberty interest of the Respondent in the care, custody and control of her children during this divorce proceeding as it has done. The Courts conduct of failing to follow minimal Due Process requirements and its failure to establish by way of hearing in which the due process rights of the Respondent are protected and credible evidence establish that the Respondent is a danger to her children resulted in the denial, infringement and or limitation of the Fundamental Liberty rights of the Respondent to be able to exercise her right of the care, custody or control her children. This violation was accomplished by Judge Guariglia with the stripping by the Court of the Respondents, Due Process right to a hearing to establish that Respondent was a danger or threat to her children and the determination cannot be presumed.

**January 10, 2017**: Respondent arrived at court on January 10, 2017 anticipating having a hearing on Respondents request for Temporary Orders so that an order might be put in place to order Petitioner to allow visitation between Respondent and the children. Petitioner had not allowed Respondent visitation or contact with the children since Petitioner without notice to Respondent removed the children early from the school they were attending on December 13, 2016. Judge York informed the parties that there would be no temporary orders hearing due to Mr. Bleibdrey Motion to Disqualify. This Motions to Disqualify did not meet the notice

8

requirements of the Texas Rules of Civil Procedure.  Prior to the undersigned's arrival to court

Mr. Bleibdrey may have had an ex parte communication with Judge York, where he may have

expressed the alleged importance of hearing his Motion to Disqualify the undersigned purely

for the purposes of having Petitioner avoid having to answer for the refusal to allow

Respondent any visitation with her children.   Refer to attached Exhibit A, Transcript of

Disqualification Hearing Page 5, Lines 13-17., where in Judge York indirectly mentions the

possible ex parte communication the undersigned is alleging occurred thus prejudicing the

Respondent's ability to have the Temporary Orders hearing.   Judge York requests the

Respondent to waive the notice requirements to allow for the Motion to Disqualify to proceed.

If the undersigned did not agree with Judge York's request that the undersigned waive the

notice requirement of the Motion to Disqualify the Motion for Temporary Orders would be

reset.  Refer to attached Exhibit A, Transcript of Disqualification Hearing Page 5, Lines 13-17.

Because Mr. Bleibdrey did not follow the Texas Rules of Civil Procedure and provide the

undersigned with proper notice of the Motion to Disqualify the undersigned Judge York gives

the undersigned an option to either waive the notice requirement or the Court will reset the

Request for Temporary Orders hearing.[2]While before Judge York the undersigned informed the

Court that the Petitioner had not allowed the Respondent any visitation with the children since

December 13, 2016. Mr. Bleibdrey attempted to excuse this conduct by making false allegations

[2]The undersigned did not understand why Judge York didn't inform Mr. Bleibdrey his motion would not be considered because it did not comply with the Texas Rules of Civil Procedure in that it did not allow for proper notice to the undersigned.  If this Motion to Disqualify was important to his case Mr. Bleibdrey perhaps should have filed, it sooner when the Petitioner first knew the undersigned was counsel for the Respondent which was as early as November 2016 and the failure of Mr. Bleibdrey to file the motion at that time may have resulted in Petitioner waiving any request for disqualification.  Why didn't the Court recognize the motion to disqualify had no basis in truth and was being used to allow Petitioner to keep the children away from the Respondent or delay the proceedings.  The motion of which Judge York stated she had read had no citation to any codified law such as a violation by the undersigned of a Texas statue or did he direct the Courts attention to any case law to support his position.  A review of case law warns courts to be careful about this type of disqualification motion because they are often used by a party as a means of attempting to disqualify an attorney as nothing more than a ploy to get rid of the attorney and run up expenses and a questionable trial tactic that unfortunately is being used more by trial attorneys in recent years. Duke Law Journal Page 1310, Vol 1979.

and putting facts into evidence he knew were false and had no basis in fact. Mr. Bleibdrey began his false allegations about alleged drug use and or drug abuse by Respondent. The undersigned objected that there were no allegations in any documents filed by Petitioner with the Court to support this new allegation. Judge York asked Mr. Bleibdrey to point out where in his Second Amended Petition he alleged the issue of Respondents alleged drug abuse. Refer to attached Exhibit A Transcript copy January 10, 2017 hearing, Page11, Lines 14-25. Mr. Bleibdrey admitted to not having amended his pleading to include such allegations. The court addressed Mr. Bleibdrey directly stating the following:

> "Mr. Bleibdrey as you are aware it is very important for both parents to have possession and access to the children. I'm not saying that if the children are in any sort of danger that access should be given". See attached Exhibit A, Page 18, Lines 2-7.

It is the undersigned opinion that Judge York was indirectly or directly providing Mr. Bleibdrey with a suggestion through her statement to him that the undersigned took to mean that if Mr. Bleibdrey needed an excuse for his client's failure to allow Respondent visitation with the children Judge York was doing her best to provide Mr. Bleibdrey with an acceptable excuse for the questionable conduct of the Respondent. Petitioner needed to establish evidence of *"any sort of danger"*, as suggested by Judge York, that Respondent posed to the children. The Court had been informed that Petitioner had not allowed Respondent visitation with the children the subject of this suit. The Court was also aware that the Petitioner had filed a Second Amended Petition in this lawsuit and Mr. Bleibdrey had to admit to the Court that Petitioner's pleading on file did not include any allegations that Respondent was a clear and present danger to the children. The Petitioner's attorney knew that he needed to have an acceptable excuse to justify the Petitioner's cruel behavior toward Respondent in not allowing Respondent to see or visit

with the children especially just after Judge York informed Mr. Bleibdrey of state policy concerning visitation.  While this behavior on the part of the Petitioner is cruel it is also a violation of the Respondent's and the children's Constitutional Right of Due Process of the law and Respondents right to the care, custody, and control of the children and a violation of the children's right to the free association with Respondent.[3]

The Family Code at §6.502 provide the following:

**TEMPORARY INJUNCTION & OTHER TEMPORARY ORDERS**

(a) While a suit for dissolution of marriage is pending and on the motion of a party *or on the court's own motion* after notice and hearing, the court may render an appropriate order...

Judge York must have known that Mr. Bleibdrey was lying about the testimony he was providing to the Court about the Respondent to paint Respondent as a drug abusing spouse. Mr. Bleibdrey knew his client had no valid excuse to justify his failure to not allow Respondent visitation with the children since December 13, 2016.  Mr. Bleibdrey apparently desperate to provide an acceptable excuse decided to fabricate information, including false statements about drug abuse and the Respondent.  See Transcript of the Hearing; Page 11 -13,of attached Exhibit A. Common sense would dictate that had the Court believed the statements made by Mr. Bleibdrey concerning alleged drug abuse by the Respondent.   Judge York could have ordered drug testing of the parties or made other appropriate orders based on the testimony of

---

[3] Petitioner had not allowed Respondent to have any contact with the children since December 13, 2016.  The pleadings of the Petitioner including Original Petition, First Amended Petition, Second Amended Petition, First Request for Temporary Orders, and Second Request for Temporary Orders did not contain any allegations of drug abuse by Respondent.  As the court pressed Mr. Bleibdrey for reasons or excuses that the children were not allowed contact with the mother, the Respondent, Mr. Bleibdrey began to testify about facts that were not in evidence and the undersigned objected to Mr. Bleibdrey lying to the court.  Judge York reviewed the pleadings of the Petitioner and noted that the most recent petition on file with the court was the Petitioner's Second Amended Petition and it did not include any allegations of drug abuse by Respondent.  Mr. Bleibdrey was unable point out any alleged allegation of drug abuse in the Petitioners pleading.  After the false testimony of Mr. Bleibdrey to excuse Petitioner's refusal to allow Respondent any contact with the children Judge York did not order drug testing of the Respondent.

Mr. Bleibdrey.  Notwithstanding the numerous false allegations made by Mr. Bleibdrey about the Respondent, Judge York did not order drug testing or take any affirmative action restricting Respondent from being around the children and simply informed the parties to work something out.   Mr. Bleibdrey was desperately attempting to convince the Court to drug test the Respondent.[4]Judge York again establishes a bias in favor of the Petitioner and the undersigned had provided the Court with sufficient information and or evidence to address the primary concern and that was that Respondent wanted Judge York to do something about her inability to see her children. Judge York's conduct or inaction and acceptance of Mr. Bleibdrey continued use of false statements or lies in support of his client's case provide evidence that cannot be overlooked that establish that the Court for whatever reason is biased in favor of Petitioner and refuses to ensure that the Constitutional Rights afforded to the Respondent pursuant to the United States Constitution specifically her right to a fair and impartial trial and the care, control and custody of the children are protected.

Petitioner had filed a lawsuit for the dissolution of marriage in Harris County and the case was assigned to the 311th District Court on November 2, 2016.  Beginning on December 13, 2016, the Petitioner had taken the children early from the school they attended without informing the Respondent.  Petitioner was not allowing Respondent any type of contact with

---

[4]Mr. Bleibdrey stated in Court false information and or facts about the Respondent that were not true, that had no basis in any fact associated with this lawsuit and was nothing more than a desperate attempt to smear the name of Respondent and by this effort influence the Court to order drug testing of the Respondent.  Mr. Bleibdrey needed to provide to Judge York an excuse to justify Petitioner's cruel conduct toward the Respondent and the children.  Petitioner's failure to allow Respondent visitation with the children was Mr. Gunstanson method of inflicting as much emotional and actual pain on the Respondent as possible and what better way to accomplish this than to take from her the things that matter more to her than anything else in her life.  Mr. Gunstanson took the children thinking that Mrs. Gunstanson would be on her hands and knees begging him to allow her to see her children.  The intentional use of false information or the use of lies should never be tolerated especially by a licensed attorney who lies to advance his clients position in a disputed custody case.  Mr. Bleibdrey provided to the Court, false and/or misleading information that at the time he provided such information to this Court he knew or should have known that what he was stating concerning the Respondent was not the truth.  Mr. Bleibdrey statements to the Court were nothing more than fictitious statements being used to bolster Mr. Bleibdrey client's inexcusable cruel conduct in not allowing the Mrs. Gunstanson to see her children.  The only greater wrong that has occurred to the Respondent is a Court who is biased in favor of Petitioner and prejudiced against Respondent.  Judge York stated the standard for visitation in cases such as this one, heard the argument of the attorneys, could reasonably assume Mr. Bleibdrey had lied and did not do one thing to protect the interest of Mrs. Gunstanson.

the children of this marriage.  The Petitioner's motive for his refusal to allow Respondent to see the children could not be attributed to any clear and present danger to the children because there was no evidence and the Petitioner had not pled or provided any evidence to substantiate such allegations.  Petitioner was not going to allow the children any type of visitation with Respondent for no other reason than it was the Petitioner's choice since he now had possession of the children.  Petitioner was going to keep the children away from their mother the Respondent for no other reason than because he could do it.  Petitioner could not describe any type of situation in which the Respondent was a clear and present danger to the children or posed an immediate danger to the children. On January 3, 2017 the undersigned set Respondent's Temporary Orders for hearing on January 10, 2017 requesting but not limited to temporary child custody order.  Petitioner was served with proper notice of the hearing and no objection was raised by Petitioner on January 10, 2017.

The 311th District Court Specifically, Judge York on January 10, 2017 violated the Respondents Constitutional Right to the Due Process of the law and Respondents Constitutional Right to the care, custody and control of the children and the children's Constitutional Right to the free association with their parents.  These Constitutional rights were violated when Judge York refused to take up Respondents Motion for Temporary Orders considering the information provided to the Court as to the status of the children.  The Court may have been involved in an ex parte communication with the Petitioner's attorney, Mr. Bleibdrey prior to the arrival at court of the undersigned.  Prior to counsel for Respondent arriving at court the issue of the Petitioners Motion to Disqualify was somehow given priority over the Respondents Request for Temporary Orders.  Notwithstanding the fact that the disqualification motion had not been set

13

for hearing and put on the court's docket, the undersigned had not been given proper notice of the Motion to Disqualify pursuant to the Texas rules of Civil Procedure.[5]

Petitioner's Motion to Disqualify was not filed in a timely manner; it was not on the court's docket for January 10, 2017, as was Movant's Request for Temporary Orders. Notwithstanding these facts, the Motion for Disqualification was the first item mentioned by Judge York after approaching the bench. Before the arrival of the undersigned at the 311th District Court it appears that Mr. Bleibdrey said something to Judge York concerning the Motion to Disqualify and anything said was made from the presence of the undersigned. Any communication between Mr. Bleibdrey and Judge York, without the undersigned present amounted to an ex parte communication. Refer to attached Exhibit A, Transcript of the Motion to Disqualify at Page 5, Lines 13-17. Judge York mentions that at Docket Call she was informed about the existence of the Motion to Disqualify. The only person who would have spoken with Judge York would have been Petitioner's attorney Mr. Brian Bleibdrey. Again, it is necessary to look at the conduct of the parties involved in the current lawsuit and while one initially may not easily infer the bias of the Court in favor of Mr. Bleibdrey the bias becomes much more apparent as court appearances increase and the bias activities of the Court become more obvious and result in consequences more sever and prejudicial to the Respondent.

The conduct of Judge York and her refusal to hear Respondents request for temporary orders, and allowing an officer of the court, Mr. Bleibdrey to come into court and without any

---

[5] **THE ETHICS OF MOVING TO DISQUALIFY OPPOSING COUNSEL FOR CONFLICT OF INTEREST:** Some motions to disqualify opposing counsel, however, may be nothing more than tactical devices to delay the proceedings or to remove opposing counsel, not because of the purported conflict of interest, but because opposing counsel is dangerously competent. In such cases a motion to disqualify is surely at least prima facie unethical.

14

penalty or sanction testify to matters that were not true established that the Court for whatever reason was biased against the Respondent and this bias ultimately resulted in the Court violating the Constitutional Rights of the Respondent and her children.  Additionally, on January 10, 2017Judge York heard the testimony of Mr. Bleibdrey over the objection of the undersigned.  The undersigned was objecting to this testimony because Petitioner had not pled any of the allegations he was now making before the court in violation of Texas Rules of Civil Procedure **Section 4. Pleading A. General** which requires pleadings:

> "Shall consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds for defense."

> **Paramount Pipe & Sup. Co. v. Muhr**, 749 S.W2d 491, 494-495 (Tex-1988) the court

stated the following:

> The purpose of the fair notice requirement is to provide the opposing party with sufficient information to enable him to prepare a defense.

In **Coffey v. Johnson**, 142 S.W3d 414,417 (Tex App—Eastland 2004, no pet.) the Court stated the following:

> "... a court must be able, from an examination of the Plaintiff's pleadings alone, to ascertain with reasonable certainty the elements of a cause of action and the relief sought with sufficient particularity..."

This action by the Court in allowing the Mr. Bleibdrey to discuss allegations not mentioned in Petitioner's petition denied to the Respondent her right to the Due Process of the law in not giving her notice of the allegations he invented and began asserting against Respondent.  Respondent due to failure of Petitioner to plead allegations of alleged danger that the Respondent posed to the children was not allowed to prepare the necessary defense

specifically at the upcoming hearing. This failure to properly plead will have consequences for the Respondent on January 25, 2017; ultimately the Petitioner is going to use these assertions for the Court to enter illegal orders denying the Respondent of her right to the care, custody, and control of her children.

The undersigned would argue that these allegations were a surprise and much of what he was stating to the Court was false and nothing more than lies directed against the Respondent in his attempt to influence the court to order drug testing of the Respondent. Mr. Bleibdrey took drastic measures in his attempt to influence the court to order drug testing of the Respondent, including making false statements to the Court in his attempt to provide to the Court an excuse for Petitioner's failure to allow the Respondent to visit the two children of the marriage.

The undersigned believes that Judge York didn't believe the testimony of Mr. Bleibdrey which was extremely critical of the Respondent and after hearing what Mr. Bleibdrey had to say about Respondent the Court but did not take any action against the Respondent based on the false statements of Mr. Bleibdrey. Judge York in not taking any action against Respondent based of the testimony of Mr. Bleibdrey must have felt that Mr. Bleibdrey was not telling the truth and therefore the Court may have realized that Mr. Bleibdrey may have committed a violation(s) of the Texas Disciplinary Rules of Professional Conduct. The testimony of Mr. Bleibdrey provided during this hearing on January 10, 2017 and subsequent hearings should have raised a substantial question as to the Mr. Bleibdrey honesty, trustworthiness, or fitness as a lawyer. The Court may be under obligation to report this behavior to the Office of the General Counsel of the State Bar of Texas or take other appropriate action. Again, why did this

Court absent, it being biased in favor of Mr. Bleibdrey allow him to make such unsupported claims against the Respondent. The statements made by Mr. Bleibdrey about Respondent were false and the Court did not take any action against Mr. Bleibdrey due to its growing bias in favor of Mr. Bleibdrey all to the prejudice of Respondent.

**January 25, 2017**: Respondent had objected to the Associate Judge hearing any matters to the extent allowed by the Family Code in her initial Counter Petition on file which was part of the Court record. Notwithstanding this point Mr. Bleibdrey was informed by the undersigned about the Respondent's objection to the Associate Judge upon the undersigned arrival at court. As soon as the undersigned arrived at court, Mr. Bleibdrey informed the undersigned that there was a need to go to Associate Judge Guariglia courtroom. Mr. Bleibdrey was asked what the purpose of the request was and Mr. Bleibdrey did not respond. Mr. Bleibdrey was informed that Respondent had retained counsel to substitute in for the undersigned to be able to proceed with the Respondents Motion for Temporary Orders immediately. The undersigned eventually determined that Mr. Bleibdrey wanted Associate Judge Guariglia to order drug testing of Respondent. Then just as it had occurred in previous hearings before this Court the scheduled hearing that was on the docket was not being discussed rather an entirely different issue would somehow replace the scheduled matter to be heard. Associate Judge Guariglia did not take up the scheduled Respondents Motion for Temporary Orders and there was no explanation by Associate Judge Guariglia why this was not done. The parties did not talk about the requested temporary orders regarding Respondents visitation with her children. The Court somehow was now interested in drug testing of the Respondent. Again, the court is allowing its bias in favor of Petitioner and his attorney Mr. Bleibdrey, to ignore the Respondent's request

for Temporary Orders and again entertain another drug test request made by Mr. Bleibdrey. The undersigned takes the liberty to assume it was Mr. Bleibdrey who is making this request because there is no logical reason for such a request to come from any other source.  The Petitioner has used his influence to stop the temporary orders hearing from going forward and continues to prevent the Court from addressing the Respondents Request for Temporary Orders.  The present hearing date had been set by Judge York two weeks earlier and Associate Judge Guariglia provides no explanation as to why the hearing was not being conducted.  One may reasonably assume that Mr. Bleibdrey may have had another ex parte communication with Associate Judge Guariglia without the presence of the undersigned otherwise how does the issue of drug testing come to the attention of Associate Judge Guariglia.  There is no other reasonable explanation why the Respondents Motion for Temporary Orders is not being heard by the Court.  The Temporary Orders hearing had been set by Judge York on January 10, 2017 to be conducted immediately following the Court hearing the Petitioner's Motion to Disqualify the undersigned.  To avoid the necessity of this hearing, Respondent had retained new counsel to substitute in for the undersigned so that the Court can move directly into the Respondents Request for Temporary Orders.  Again, one may assume that, Mr. Bleibdrey is redirecting the court's attention away from the temporary orders hearing and into an area yet to be plead by Petitioner.  The Court does not discuss the temporary orders requested by the undersigned and most recently put on the Court's calendar by Judge York.  The Respondent is forced to deal with two surprise matters resulting in negative consequences for the Respondent.  First the drug test which was considered and denied by Judge York two weeks earlier.  Respondent questions how something not on the docket and not pled by Petitioner is again before the Court.

18

The undersigned assumed that on January 10, 2017 Mr. Bleibdrey may have approached the Court prior to the arrival of the undersigned and had an ex parte communication with Judge York concerning his untimely Motion to Disqualify the undersigned ultimately resulting in the Courts refusal to hear Respondents Request for Temporary Orders.  The undersigned further believes that Mr. Bleibdrey has again approached the Court and discussed in an ex parte communication with the Court the need to drug test the Respondent.  Other than the Court's continuing bias in favor of Petitioner there is no adequate explanation as to how for a second time the Respondents Motion for Temporary Orders is not being heard.  Absent Mr. Bleibdrey continuing to have ex parte communications with the Court how is the court deciding to change the course of the scheduled hearing set by Judge York.  The undersigned assumes that Associate Judge Guariglia was aware of the temporary orders setting and the undersigned did not request that a change be made in the docket so why is the Court doing something that it was not asked to do by the undersigned?  Absent a bias in favor of the Petitioner why is the court dealing with matters that look like issues previously requested by Petitioner and addressed at the January 10, 2017 hearing to the detriment of the Petitioner. Notwithstanding the undersigned inability to comprehend what exactly is occurring the Courts conduct when viewed by a neutral observer it looks as if the Court is acting in a way that gives the appearance the Court favors the Petitioner all to the prejudice of the Respondent and such conduct ultimately results in violations of the Respondents Constitutional Right of Due Process of the law and Respondents right to the care, custody and control of the children and also violation of the children's right to the free association with Respondent.

On January 25, 2017 Mr. Bleibdrey stated to the Court there had been an agreement of the parties to drug test and the court accepted this statement made by Mr. Bleibdrey despite a common-sense review of the facts that make such an agreement impossible.  Respondent did not consent to drug testing and the representations made by Mr. Bleibdrey to the court were false.  Respondent's constitutionally protected right against illegal search without consent or reasonable suspicion was violated by Judge Guariglia when the court accepted Mr. Bleibdrey false representation. A simple review or reading of the transcript of that hearing establish that such an agreement as alleged by Mr. Bleibdrey was contrary to a common sense reading of the transcript of that hearing as incorrect and impossible.

The Court in refusing to hear Respondents Request for Temporary Orders and again taking up an issue addressed by Judge York two weeks earlier is continuing evidence that this Court is for whatever excuse acting in a manner that gives the appearance it is biased and prejudiced against the Respondent in that the Court is unable to treat Respondent fairly in its failure to take up matters properly set for hearing by the court.  The likelihood of Respondent receiving a fair jury trial from either Judge York or Judge Guariglia is unlikely to occur.  Even the most liberal attempts to explain how the Court went from numerous settings to hear Respondents Request for Temporary Orders hearing to drug testing absent some bias by the Court in favor of the Petitioner and to the prejudice of Respondent there is no legal explanation or rational observation to explain the Courts conduct.  There is no adequate explanation of how matters properly set before the court are not being heard and as if magic, matters important to Petitioner are being heard.  Rather the Court appears to be taking up matters not on the docket but matters that are brought to them by Petitioners attorney Mr. Bleibdrey possibly through ex

parte communication with either Judge Guariglia and or Judge York. These inferred actions between Mr. Bleibdrey and the Court have resulted in serious violations of Respondents Constitutional Rights including but not limited to the following: unlawful search, violations of Respondents Constitutional Due Process Rights, violations of Respondents Constitutional rights to the care, custody and control of her children and the Courts violation of the children's Constitutional rights to the free association with Respondent.

Judge York on January 10, 2017 denied the Petitioner's request for Court Ordered drug testing and set the Respondents Request for Temporary Orders to be heard on January 25, 2017. Petitioner had not amended his pleadings to include any allegation of drug abuse by the Respondent for the January 25, 2017 hearing. The Petitioner had not provided any new evidence in the form of medical records, arrest records, sworn statements or in court witness testimony to provide the necessary probable cause to support a Court Ordered drug test. Petitioner must have concluded after the January 10, 2017 hearing that Petitioner did not have sufficient evidence to sustain the Court ordering drug testing. Petitioner and or his attorney Mr. Bleibdrey realized that the only way to get drug testing ordered of the Respondent was to have the Respondent consent to such testing. Mr. Bleibdrey again makes false statements about Respondent to Judge Guariglia. Mr. Bleibdrey claimed to have obtained an agreement of the parties to be drug tested. This representation by Mr. Bleibdrey was false in that the consent of the Respondent had not been obtained from Respondent. The undersigned was with Respondent up and until the court authorized the substitution of Mr. Joglar to replace the undersigned. During this time Mr. Bleibdrey did not approach the undersigned to discuss Respondent consenting to be drug tested. Mr. Bleibdrey did not provide any testimony about

21

when Respondent gave consent or agreed to drug testing. If the alleged consent was provided by the substituted counsel Mr. Julio Joglar, prior to the court allowing for his substitution of the undersigned he had no authority and had not obtained the consent from the Respondent for drug testing or the Court to substitute in for the undersigned.  The transcript of the hearing establishes that at no time after Mr. Joglar's substitution for the undersigned did Mr. Joglar have the time or does the record indicate a break to discuss the issue of consent with Respondent.  The record of the hearing shows the Courts approval of the substitution and almost immediately after this time Mr. Bleibdrey announces that he has an agreement to drug test.   Only one question exists and that was when he obtained the agreement if the undersigned did not make any such agreement.  Again, absent the court being biased and in favor of the Petitioner rational minds would ask when did such an agreement occur.  Refer to attached Exhibit F which is a letter prepared by Mr. Joglar in which he describes the conduct of Associate Judge Guariglia before Mr. Joglar was substituted in and appears to indicate that Associate Judge Guariglia wanted drug testing.  It must also be questioned if Associate Judge Guariglia was involved in any ex parte communications before the Court allowed the substitution of Mr. Joglar for the undersigned. If the activities as described in Exhibit F occurred before the substitution of Mr. Joglar the undersigned does not understand the participation of the Court other than a knowing disregard of the rules ultimately favoring the Petitioner and to the prejudice of Respondent.  The assertion by Mr. Bleibdrey that there was an agreement to have drug testing of Respondent is consistent with his conduct during the January 10th, 2017 hearing that involved false statements about the Respondent.  Any casual observer of the conduct of either Judge York and/or Associate Judge Guariglia may reasonably conclude that

22

such conduct of the Court gives the appearance of bias or prejudice against the Respondent and in favor of the Petitioner ultimately leading to the Constitutional Rights of the Respondent being violated by this Court.

Based on the false statement made by Mr. Bleibdrey the Court signed an Order directing National Screening Center (hereinafter referred to as NSC) to conduct a drug and alcohol test of the parties. Refer to attached Exhibit D. Since the rendition of the court order for drug testing of the parties, there have been numerous violations of this Order which the Court must be aware of and has taken no action against the individuals who may have violated the Court Order. Mr. Bleibdrey obtained a copy of a portion of the drug test results and filed it with the Court. Refer to attached Exhibit E. The documents filed by Mr. Bleibdrey with the Court did not contain any alcohol test results. The Court or NSC has not questioned or accounted for the missing Court Ordered alcohol test that was ordered at the same time the drug test was ordered. This issue of the missing alcohol test results has not been addressed by either Mr. Bleibdrey or Associate Judge Guariglia. Mr. Bleibdrey was given copies of the drug test results by some unknown individual at NSC and those results could have included the alcohol test results. The test results that Mr. Bleibdrey filed with the Court presumably obtained from NSC may or may not have contained such alcohol test results. The drug test results filed with the court by Mr. Bleibdrey did not have a business records affidavit attached to the records as required by the Texas Rule of Evidence 902. The documents are allegedly drug test results obtained from NSC based on the Court Ordered drug test of the parties allegedly conducted by NSC and without a Business Records Affidavit from the custodian of such records making the documents hearsay and are not admissible into evidence to the knowledge of the undersigned.

Associate Judge Guariglia has made no inquiries about the irregularities of the documents filed with the court. NSC had no written authorization from the Respondent as required by HIPPA or Texas law. The Court Order authorizing the illegal drug test of Respondent provided that the drug test results were to be faxed to the 311th Judicial District Court and once received by the court the test results were to be placed under seal. The undersigned believes that this aspect of the Courts order was not followed and Associate Judge Guariglia has said nothing about Mr. Bleibdrey obtaining drug test results and filing them with the court or the absence of the alcohol portion of the court ordered drug test. The undersigned has heard no excuse provided by Mr. Bleibdrey or this Court as to why a party who is contesting custody and using the drug test results as the basis for restricting the Respondents ability to see the children; why is Mr. Bleibdrey obtaining a copy of something that should have been faxed to the Court and be under Court Seal? Respondent believes that the Petitioner has a problem with the consumption of alcohol and the alcohol related portion of the Court Ordered drug test may prove this point, thus accounting for its absence from those test results filed by Mr. Bleibdrey.

The Respondent believes that this Court is biased and has shown partiality toward National Screening Center based on the unsolicited statements made by Associate Judge Guariglia prior to the modification hearing on June 27, 2017. Prior to this hearing as the undersigned and the Respondent entered the court, Associate Judge Guariglia was speaking from the bench and it was not immediately clear to the undersigned who exactly she was addressing. It soon became evident that Associate Judge Guariglia was talking about NSC and the drug test results relating to the unauthorized Court Ordered drug testing. Associate Judge Guariglia mentioned in this talk a Mr. Jefferies whom the undersigned believes is the owner or

operator of the National Screening Center.  Associate Judge Guariglia continued stating that

when "they" or when NSC/Mr. Jefferies conducted the drug test for the Court and Mr. Jefferies

"makes no mistakes" and that there had never been a successful challenge of any drug test

conducted by National Screening Center.  The comments of Associate Judge Guariglia in open

court about National Screening Center indicate to the undersigned that this court is biased in

favor of work conducted or completed by National Screening Center.  This Court has authorized

NSC to conduct its court ordered drug and alcohol test and forces the parties to be tested by

NSC.  Associate Judge Guariglia statement "Mr. Jefferies makes no mistakes" in its testing

provide additional evidence that Associate Judge Guariglia is biased and favor of NSC.  Associate

Judge Guariglia without expert testimony offered by the Petitioner to prove the reliability of the

NSC's scientific report as required by the United States Supreme Court in **Daubert v. Merrell**

**Dow Pharmaceuticals**(92-102), 509 U.S. 579 (1993) task the trial court with the following:

> "general acceptance" is not a necessary precondition to the admissibility of scientific evidence
> under the Federal Rules of Evidence, but the Rules of Evidence--especially Rule 702--*do assign to the*
> *trial judge the task of ensuring that an expert's testimony both rests on a reliable*
> *foundation*(emphasis added and is relevant to the task at hand. Pertinent evidence based on
> scientifically valid principles will satisfy those demands.

Associate Judge Guariglia stated her bias in favor of this company on June 27, 2017 by

informing the Court that National Screening Center/Mr. Jefferies made no mistakes.  Judge

Guariglia violated the Respondents Due Process Rights on this day but the Court had been

continually violating those rights in every appearance before this court.  The basis of the

restriction placed on Respondent stem from the alleged test results and filed with the Court by

Mr. Bleibdrey in violation of the Court Order. Associate Judge Guariglia does not question the

accuracy of the test results provided by NSC and filed in violation of the Courts Order by Mr.

Bleibdrey.  It is also worth noting that the testing NSC is ordered to do pursuant to the Court

Order must be completed by another company not identified in the Courts Order because NSC is not qualified to do the requested scientific testing. NSC allegedly sends parties urine or hair samples to a location in Kansas or beyond the jurisdiction of the Court, again making parties ability to review and question the testing process a near impossibility thus further violating the Due Process rights of the Respondent. This conduct is still further evidence that this Court is incapable of providing Respondent with a fair and impartial jury trial.

The above conduct of Associate Judge Guariglia resulted in the Court's failure to utilize established substantive and procedural safeguards to ensure the reliability and or accuracy of the scientific report allegedly created by NSC. This Court and or Associate Judge Guariglia have failed to ensure the Constitutional Due Process protections available to Respondent are being followed to protect the interest of the Respondent. Judge Guariglia simply took the papers filed by Mr. Bleibdrey and allowed those into evidence violating the Respondents Constitutional rights to the Due Process of the law.

Additionally, on June 27th, 2017at the commencement of the Petitioners Motion to Modify Temporary Orders the undersigned was present to represent the interest of Respondent and before the undersigned had an opportunity to speak the Court, Associate Judge Guariglia without cause stated that the undersigned could not represent Petitioner in the modification hearing. Associate Judge Guariglia falsely stated that the undersigned had been disqualified from the case and could not represent the Petitioner. The undersigned informed the court that her statement was not correct, and she repeated the false statement. Associate Judge Guariglia did not determine the accuracy of her statement to the prejudice of the Respondent. The court clerk to the right of the Judge's bench and only a few feet away and

with a computer terminal on the Judge's bench it would have taken little or no time to verify the accuracy of her statement.  During this same time that the Judge made the false statement, Mr. Bleibdrey was at counsel table to the right of Associate Judge Guariglia as Mr. Bleibdrey was facing the bench.  Mr. Bleibdrey likely aware of the statement of Associate Judge Guariglia, that the undersigned had been disqualified.  Mr. Bleibdrey as an officer of the court had an obligation to speak and correct the false statement but said nothing.[6]  The result of the false statement by Associate Judge Guariglia and the failure of Mr. Bleibdrey to correct this error resulted in the undersigned was not allowed to represent the Respondent during the modification hearing.  Because of this Court's violation of the Constitutional Rights of the Respondent to Due Process the Respondent suffered the additional violations of her Constitutional Right to the care custody and control of her children.  The Court interfered with these constitutional rights without a showing that the Respondent was a clear and present danger to the children the subject of this lawsuit.  Additionally, if there exist a possibility that a person may be stripped of or have a known constitutional right interfered with then it is incumbent on the Court not to interfere with such a right as was the present case where Associate Judge Guariglia falsely represented that the undersigned was disqualified from representing Respondent.  The lack of representation the Respondent based on the false statement made by Associate Judge Guariglia appears to be intentional.  The Court was able to easily check the truth of her assertion but did nothing.  Mr. Bleibdrey who had passed on the issue of the disqualification motion who could have corrected the false accusation made by Associate Judge Guariglia said nothing.  The basis of this modification was founded on the

---

[6]Mr. Bleibdrey on January 25, 2017 informed Judge Guariglia that Petitioner was passing his Motion to Disqualify the undersigned. See attached transcript at Page 13, Lines 15-20.

alleged results of the illegal drug test obtained without reasonable suspicion and without consent of the Respondent in violation of the Respondents Constitutional right to the Due Process of the law.  The State of Texas i.e. the Court and the Petitioner provided no evidence of any clear and present danger to the children to allow the State District Court to justify its interference with Respondent's children and or its violations of Respondents and the children's constitutional rights.

On September 11, 2017 this case was dismissed for want of prosecution by Judge York and with this dismissal the unconstitutional orders limiting the Respondents visitation were dismissed.  Considering these orders were put into place to protect the health safety and welfare of the children, the Court did nothing to protect these orders or keep them in place. The Petitioner also who has been claiming that Respondent is now a danger to the children did nothing once the case was dismissed to ensure that the temporary orders stayed effective.  The court again without any serious questions asked of Mr. Bleibdrey reinstated the case. Respondent argued in her response against Petitioner's reinstatement that Mr. Bleibdrey had been involved in activities many of which involved violation of State and Federal law that prevented him from prosecuting his clients claim, but as to be expected the Court again violating the Constitutional rights of the Respondent and its obvious bias in favor of Petitioner simply asked no questions of the Petitioner and allowed the reinstatement.

In *Stanley v. Illinois* the Supreme Court dealt with the issue of the Illinois State government's law that children born to unwed fathers become wards of the State upon death of the mother.  The father of the children challenged the law in that the law presumed that the unwed father was an unfit parent without a hearing to make such a determination.  The father

28

claimed violation of the equal protection of the laws afforded him under the Fourteenth Amendment or the equal protection of the law. The Court in dicta stating, "In the case before us if there is a delay between the doing and the undoing petitioner suffers from the deprivation of his children and the children suffer from uncertainty and dislocation". The Court looking at the status of the Petitioner as "unwed" and the questionable state law applied only to unwed fathers found there state law that as a matter of due process of the law Stanley was entitled to a hearing on his fitness as a parent before his children could be taken away from him and by denying him a hearing that was extended to all other parents challenging custody the state denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment. Judge York and Associate Judge Guariglia appear to have made a presumption at some point that the Respondent was a danger to her children and did not provided her with the necessary hearing to specifically prove that she was unfit and as a result her children have been taken from her unless she capitulates to the unnecessary demands of the State. Respondent suffers from the deprivation of her children of which the passage of time only deepens the damage between the children and their mother. Associate Judge Guariglia stripped Respondent of her equal protection of the law as guaranteed by the Fourteenth Amendment by introducing hearsay and illegal drug test report obtained in violation of the Respondent due process right and ultimately took her children away without conducting an unfitness hearing. The private interest is that of a mother and her right to the care, custody and control of her children is a significant interest that should be protected against the unbridled power of the State. The State has an interest in the welfare of children within its jurisdiction, but that interest cannot be enforced to the detriment of the least powerful among us and this Court has used its power to

crush this woman, the States means do not justify the ends. The Court has frequently emphasized the importance of the family.  The rights to conceive and to raise one's children have been deemed "essential", *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) "basic civil rights of man, "*Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942). And "rights far more precious … than property rights, *"May v. Anderson*, 345 U.S. 528, 533 (1953). *Prince v. Massachusetts,* 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment Skinner *v. Oklahoma,* supra at 541 and the Ninth Amendment *Griswold v. Connecticut*, 381 U.S. 479, 496 (1965) (Goldberg concurring.)  The Equal Protection Clause necessarily limits the authority of a State to draw legal lines as it chooses. *Glona v. American Guarantee Co*. 391 U.S. 73, 75-76 (1968)

The action of Associate Judge Guariglia and or Judge York is without precedent to the undersigned and the conduct of Associate Judge Guariglia including her false statement about the status of the undersigned further established the mountain of circumstantial evidence that the conduct of Associate Judge Guariglia and or Judge York are biased and/or prejudiced against the Respondent thus resulting in numerous violations of the Constitutional Rights of the Respondent and her children.  Any orders that were made by the Judges of this Court should be set aside and the children be returned to the Respondent immediately.  Respondent be given a fair and impartial trial and to protect her fundamental Constitutional Rights guaranteed to her by the Constitution of the United States of America.

                              **Respectfully submitt**ed,


                              **Law Office of Ralph Ray Gregory, Jr.**
                              Ralph Ray Gregory, Jr.
                              4411 Donna Bell Ln

Houston, Texas 77018
713 861 1293
Fax: 866 749 1296

By:

**Ralph Ray Gregory, Jr**.
State Bar No. 08438250
Theologyma2010@gmail.com
**Attorney for Respondent/Counter-Petitioner**

## Certificate of Service

I certify that a true copy of the above was served by hand to Judge Alicia York and Associate Judge Diane Guariglia at the Harris County Civil Court House, 201 Carolina, 8th Floor, Houston, Texas, 77002 and the attorney of record for Petitioner Bryan J. Bleibdrey, by at 8505 Technology Forest Place, Suite 1102, The Woodlands, Texas, 77381 and by e- mail to Bryan@BBattorney.com, and the Amicus Attorney, Rocky L. Pilgrim by hand delivery return receipt requested and regular mail at 211 Commerce St. Tomball, TX 77375 in accordance with the Texas Rules of Civil Procedure on ~~April 30~~ *May 1st*, 2018.

Ralph Ray Gregory, Jr.

**VERFICATION**

**RALPH RAY GREGORY, JR**. appeared in person before me today and stated under oath;

"My name is Ralph Ray Gregory, Jr., I am above the age of eighteen years of age and I am fully competent t make this affidavit/verification.  The facts stated in this Motion to Remand are within my personal knowledge and are true and correct.

"I was the attorney for the Respondent/Counter Petitioner in the State court until being disqualified.  I was present for and or attended those activities identified in this Petition for Removal."

**Ralph Ray Gregory, Jr.**

**Signed** under oath before me on April 30, 2018.

Zoila Garza
My Commission Expires
01/03/2021
ID No. 130947350

Notary State of Texas

Zoila Garza
**Printed Name**